IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINE WILLIAMS,

          Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

      Defendant.

_____

Civ. No. 1:13-cv-01309-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff Christine Williams brings this action for judicial review of the Social Security Commissioner's decision denying her application for Supplemental Security Income Benefits. Plaintiff filed an application for benefits on June 5, 2009. After a hearing on February 21, 2012, an Administrative Law Judge (ALJ) denied plaintiff's claim finding plaintiff was not disabled. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner did not err in either weighing the medical opinions, or concluding plaintiff's depression and anxiety were not severe impairments, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g) (2010); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment'" for that of the Commissioner," and therefore must affirm. *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration follows a five-step sequential evaluation process to determine if an individual is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). Plaintiff carries the initial burden of proof for the first four steps. If plaintiff satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520 (2012). At step five, the Commissioner's burden is to demonstrate that the plaintiff is capable of making an adjustment to other work after considering the plaintiff's residual functional capacity (RFC), age, education, and work experience. *Id.*

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since her application date. TR 11.[1] At Step Two, the ALJ found that plaintiff had two severe impairments: right temporal headache syndrome and sinusitis, and two non-severe impairments: depression and anxiety. TR 11-12. At Step Three, the ALJ found that plaintiff had no impairment or combination of impairments that met or equaled the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2014). At Step Four, the ALJ found that plaintiff had the RFC to perform work at all exertion levels with the following nonexertional limitations: "she is limited to tasks that involve frequent, but not constant, stooping, kneeling, crouching, and crawling. Such tasks may involve no more than occasional balancing or climbing of ramps/stairs/ladders/ropes/scaffolds. She must also avoid more than moderate exposure to workplace hazards, such as unprotected heights or moving machinery." TR 13. At Step Five, the ALJ relied on a vocational expert's testimony indicating that a person with the same RFC, work experience, education, and age as the plaintiff could perform work as a laundry worker, a stock clerk, or a general helper. TR 17. Thus, the ALJ determined plaintiff was not disabled under the Social Security Act. TR 17.

Plaintiff appeals to this court, assigning error to the ALJ for the following reasons:

1) Failing to give controlling weight to the treating physician (Dr. Miller) opinion.

2) Finding that plaintiff's impairments of depression and anxiety and a combination of these impairments constitute a *de minimis*, groundless claim at Step Two of the Sequential Evaluation.

3) Finding "non-disability" as a result of failing to credit VE testimony based on Dr. Miller's RFC that must be given controlling weight.

---

[1] "TR" refers to the Transcript of Social Security Administrative Record [ECF No. 9] provided by the Commissioner.

**I. The ALJ appropriately determined that the treating physician's February 2010 opinion should not be given controlling weight.**

The ALJ did not give controlling weight to the February 2010 opinion of plaintiff's treating physician, Dr. Kristen Miller. TR 15. The ALJ can only disregard a treating physician's opinion by providing specific, legitimate reasons based on substantial evidence in the record. *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1995). In this case, the ALJ provided two reasons for discounting Dr. Miller's opinion. First, the ALJ found that Dr. Miller's own opinion was inconsistent with her treatment notes. Second, plaintiff's testimony was inconsistent with Dr. Miller's opinion.

Ia.    Dr. Miller's opinion is inconsistent with her treatment notes.

The Ninth Circuit has held that a discrepancy between a treating physician's notes and opinion is a legitimate reason for discounting that physician's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In this case, the ALJ determined that Dr. Miller's treatment notes were inconsistent with her February 2010 opinion. Specifically, the ALJ noted Dr. Miller's earlier assessments greatly differed from the February 2010 opinion. TR 15.

The ALJ's weighing of Dr. Miller's contradictory opinions is supported by the record. Dr. Miller's treatment notes before February 2010 indicate plaintiff suffered from migraines 3-5 times per month. TR 225. In September 2008, Dr. Miller noted a previous increase in plaintiff's migraine medication. TR 243. The increase corresponded with an increase in the frequency of plaintiff's migraines. By the September 2008 visit with Dr. Miller, plaintiff's migraines were "back down to their usual twice a month regimen" after a spike to twice a week migraines. TR 243. The reported frequency of plaintiff's migraines matched Dr. Miller's notes from January 2009, when plaintiff reported "[s]he is still getting two episodes of headaches a month and occasionally three." TR 240.

The ALJ noted Dr. Miller's assessment changed dramatically in February 2010. At that point, despite no evidence in the record demonstrating a change in plaintiff's migraines, Dr. Miller opined that plaintiff suffered from "severe" headaches that "prevents all activity." TR 336. Despite her prior treatment notes indicating plaintiff normally suffered 2-3 migraines per month, in February 2010, Dr. Miller stated plaintiff suffered from 15-18 migraines per month. TR 336. Dr. Miller opined plaintiff would need to take four hour long rests from work (on average), up to five days per week. TR 338. Dr. Miller concluded plaintiff would, on average, miss 50-75% of workdays due to migraines. TR 338.

The ALJ noted Dr. Miller's February 2010 opinion also contradicted her August 2009 opinion. TR 15. In August 2009, Dr. Miller noted plaintiff's migraines did not impair her activities of daily living in any way. TR 194. Dr. Miller noted plaintiff was "independent and takes care of disabled daughter including performing her home schooling." TR 194.

Additionally, the ALJ noted that Dr. Miller's February 2010 opinion contradicted her notes from February 2012. TR 15. Dr. Miller's February 2012 notes indicate that plaintiff was a member of a health club, occasionally exercised, appeared in no acute distress upon examination, and maintained a "moderate" level of activity. TR 350. This was contrary to Dr. Miller's February 2010 opinion that plaintiff's headaches "would likely cause her to take unscheduled breaks and that she would likely miss more than four days of work per month." TR 15. Further, the ALJ noted that as of March 2011, plaintiff "obtains relief from her symptoms '100% of the time" when taking Imitrex," a drug that helps plaintiff control her headache symptoms. TR 15. [2]

---

[2] Although this was a treatment note from neurologist Michael Narus, D.O., Dr. Miller requested the examination and she was cc'd on the report. AR 340-46.

<u>Ib.    Plaintiff's testimony was inconsistent with Dr. Miller's February 2010 opinion.</u>

The ALJ also compared Dr. Miller's February 2010 opinion with plaintiff's own testimony regarding her activities of daily living. TR 15. The plaintiff testified that she takes her daughter to the YMCA five days a week and occasionally exercises while there. TR 41-42. The ALJ also noted that plaintiff provides full-time care for her developmentally disabled daughter. TR 15. This includes helping her daughter with dressing, personal hygiene, and feeding. TR 15. The ALJ took into account that plaintiff's parents occasionally help plaintiff care for her daughter, and still found that "the level of care that the [plaintiff] provides for her daughter suggests that she retains significant physical and mental functioning." TR 15.

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Here, the ALJ reasonably concluded that Dr. Miller's February 2010 opinion was inconsistent with her own treatment notes and contradicted by other medical evidence in the record. The ALJ did not err in assigning greater weight to the medical opinions that contradicted Dr. Miller's February 2010 opinion. The ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, in assigning Dr. Miller's February 2010 opinion little weight.[3]

**II. Plaintiff's depression and anxiety at Step Two of the Sequential Evaluation Process.**

The ALJ found that plaintiff's depression and anxiety alone or in combination were not "severe" medical impairments at Step Two of the Sequential Evaluation. At Step Two, the plaintiff must show that she has a medically severe impairment or combination of impairments that limits the plaintiff's ability to do basic work activities. 20 C.F.R. § 416.920(c) (2012).

---

[3] This same analysis applies to plaintiff's third contention that the ALJ failed to credit VE testimony based on Dr. Miller's RFC. Because the ALJ appropriately decided not to give Dr. Miller's opinion controlling weight, this claim fails.

> In making this determination, an ALJ is bound by 20 C.F.R. § 404.1520a. This regulation requires those reviewing an application for disability to follow a special psychiatric review technique. 20 C.F.R. § 404.1520a. Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, *id*. § 404.1520a(b), rate the degree of functional limitation for four functional areas, *id*. § 404.1520a(c), determine the severity of the mental impairment (in part based on the degree of functional limitation), *id*. § 404.1520a(c)(1), and then, if the impairment is severe, proceed to Step Three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder, *id*. § 404.1520a(c)(2).

*Keyser v. Commissioner Social Sec. Admin*, 648 F.3d 721, 725 (9th. Cir. 2011). The four functional areas are : (1) activities of daily living; (2) social functioning; (3) limitations in concentration, persistence or pace; and (4) episodes of decompensation. 20 C.F.R. §404.1520a(c)(3)(4) (2012).

Plaintiff argues that plaintiff met the *de minimus* standard because plaintiff was "diagnosed with major depressive disorder (TR 331-334) and her depression and anxiety continually triggered and exacerbated her severe and chronic migraine headaches." Pl. Memo. 17. Plaintiff argues the ALJ failed to evaluate the evidence or explain how it indicates a "groundless" claim. Pl. Memo 18. This court disagrees. First, while plaintiff had "symptoms of a major depressive disorder," there was not an actual diagnosis. TR 331. Further, the notes indicate that plaintiff's depressive disorder is in "fair control." TR 331.

Second, the ALJ examined each of the four functional areas and provided a detailed record of why plaintiff's depression and anxiety caused only mild limitations. If the limitation is found to be "mild" in the first three areas and "none" in the fourth area, then the impairment or impairments are not considered severe, unless other evidence indicates a more than minimal limitation in the ability to perform work activities." 20 C.F.R. 416.920a(d)(1). In coming to this conclusion, the ALJ specifically relied on evidence that plaintiff can prepare proper meals, care for her daughter, go outside, walk, drive a car, ride a bicycle, and use public transportation. TR

129-31. Plaintiff does not have "close" friends, but is pleasant and "easy to get along with." TR 133,199. Plaintiff "presented as alert and fully oriented," TR 199, and her "mental status data did not reflect any significant areas of impairment in attention, concentration, or memory functioning[,]" TR 200.

The ALJ did not err in concluding that plaintiff's depression and anxiety and the combination of depression and anxiety are non-severe at Step Two.

## **CONCLUSION**

The Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 5th day of November, 2014.


_____/s/ Michael J. McShane _____
Michael McShane
United States District Judge